**Clarence THACKER, Plaintiff,**

v.

**NEW YORK LIFE INSURANCE COMPANY, a New York Corporation, Defendant.**

**No. Civ. S-92-363 LKK.**

United States District Court,
E.D. California.

Aug. 14, 1992.

Brian M. Englund, Grossfeld, Dougherty & Grossfeld, Sacramento, Cal., for plaintiff.

Richard J. Kilmartin, Knight, Boland & Riordan, San Francisco, Cal., for defendant.

### ORDER

KARLTON, Chief Judge Emeritus.

Before the court is defendant New York Life Insurance Company's remaining motion to dismiss for failure to state a claim upon which relief may be granted.[1] The motion is addressed to plaintiff's eighth cause of action alleging a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962–68. For the reasons stated below, the motion to dismiss is DENIED.

## I

### STANDARDS ON A MOTION TO DISMISS

■ On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *Id.; Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring a fact from the allegations of the complaint).

■ In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged or that the defendants have violated ... laws in ways that have not been alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## II

### THE COMPLAINT[2]

Plaintiff Clarence Thacker purchased an insurance policy from defendant New York Life Insurance Company ("New York Life") in 1951. In 1968, Gordon Alfonso Weber and an individual named Forsythe, agents of defendant New York Life, induced plaintiff to purchase another life insurance policy by representing to plaintiff that the premium for the policy was $400 per year, when in fact the premium was $949.50 per year. Weber arranged for payment of the difference between the actual premium and the represented premium by using dividends from plaintiff's 1951 policy without plaintiff's knowledge. Defendant New York Life, also without plaintiff's knowledge, contrived to place loans against the two policies to buy term insurance. Weber also represented to plaintiff that plaintiff did not need to continue making payments on the 1951 policy, because the dividends from the 1951 policy would support the 1951 policy without further payments.

In 1972, Weber represented to plaintiff that plaintiff could pay an advanced premi-

1. The balance of defendant's motion was addressed to various other causes of action and was disposed of at a hearing on July 20, 1992.

2. In my discussion of plaintiff's complaint, I describe the allegations as facts. I do so because on a motion to dismiss the court must assume the truth of the allegations. At trial, of course, plaintiff bears the burden of proving the allegations.

um on the 1968 policy and thereby convert the 1968 policy into a paid-up policy. Based on these representations, plaintiff was led to believe that he would not need to make any more payments on either his 1951 or 1968 policies. The dividends from the policies were in fact insufficient to pay the annual premiums, and New York Life terminated both policies without notice to plaintiff.

Between 1971 and 1982, Weber maintained contact with plaintiff and represented to him that both policies were in full force and effect and that plaintiff had no need for concern about their validity. In 1987, plaintiff learned from defendant that his policies had in fact lapsed. In 1991, when plaintiff learned that Weber had similarly defrauded other clients of defendant, he brought the instant suit against New York Life.

### III

### RICO AND THE McCARRAN–FERGUSON ACT

■ Defendant moves to dismiss plaintiff's eighth cause of action for violation of RICO, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962–68, asserting a failure to state a claim upon which relief can be granted. Defendant maintains that application of RICO as advocated by plaintiff's claim would invalidate or impair state insurance laws, and therefore is precluded by the McCarran–Ferguson Act, 15 U.S.C. § 1012.[3]

Defendant's argument that RICO would invalidate state law turns on the fact that there is no private cause of action for unfair trade practices under the California Insurance Code. Because RICO would create a private cause of action for behavior which is regulated by the Unfair Trade Practices Act of the Insurance Code, defendant argues that RICO would supersede California's statutory scheme which places exclusive authority to enforce these state

insurance laws in the hands of the California Insurance Commissioner.

■ The issue is one of statutory interpretation. "The first step of any district court in resolving a matter turning on statutory construction is to determine if there is binding authority construing the statute." *Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal.1988). Neither the Supreme Court nor the Ninth Circuit has resolved the issue tendered by the motion. Nonetheless, significant guidance can be gained from examining the Supreme Court's manner of resolving issues relating to the effect of the Act on various other federal statutes. In determining whether Congress intended that the McCarran–Ferguson Act preclude application of a particular federal law, the Supreme Court has looked to both the language and the purpose of the Act. *See Securities and Exch. Comm'n v. National Sec. Inc.,* 393 U.S. 453, 458, 89 S.Ct. 564, 567, 21 L.Ed.2d 668 (1968). Clearly, the plain language of the statute is not dispositive here. A statute creating a federal cause of action for congressionally-defined racketeering conduct does not on its face "impair or supersede any law enacted by any State for the purpose of regulating the business of insurance." I turn to the high court's explication of the statute's purpose.

We are taught that Congress adopted the McCarran–Ferguson Act in response to *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). *SEC,* 393 U.S. at 458, 89 S.Ct. at 567. Prior to the *South–Eastern* decision, it had been assumed that issuing a policy of insurance was not a transaction affecting interstate commerce. *Id.* Consequently, the regulation of insurance transactions was thought to rest exclusively with the states. *Id.* In *South–Eastern,* the Supreme Court held that insurance transactions were subject to federal regulation under the Commerce Clause, and that the antitrust laws applied to them.

---

**3.** The McCarran–Ferguson Act provides in pertinent part: "No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance...." 15 U.S.C. § 1012(b).

Congress reacted to the *South–Eastern* decision by adopting the McCarran–Ferguson Act. Congress determined "that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. § 1011. "The primary concern of Congress in the wake of [the *South–Eastern*] decision was in enacting legislation that would ensure that the States would continue to have the ability to tax and regulate the business of insurance." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 217–18, 99 S.Ct. 1067, 1076, 59 L.Ed.2d 261 (1979); *see also SEC*, 393 U.S. at 458, 89 S.Ct. at 567. Among other purposes, the McCarran–Ferguson Act was intended "to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation." *SEC*, 393 U.S. at 459, 89 S.Ct. at 568.

A four-part analysis has been developed to determine whether a federal statute is inapplicable to given conduct by virtue of the McCarran–Ferguson Act. *See Cochran v. Paco, Inc.*, 606 F.2d 460, 464 (5th Cir.1979) (citing *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)); *Elliott v. State Farm Mut. Ins. Co.*, 786 F.Supp. 487, 493 (E.D.Pa.1992); *Brownell v. State Farm Mut. Ins. Co.*, 757 F.Supp. 526, 535 (E.D.Pa.1991); *Senich v. Transamerica Premier Ins. Co.*, 766 F.Supp. 339, 340 (W.D.Pa.1990); *see also Lowe v. Aarco-American, Inc.*, 536 F.2d 1160, 1162 (7th Cir.1976); *Gerlach v. Allstate Ins. Co.*, 338 F.Supp. 642, 649–50 (S.D.Fla.1972). The test is specifically derived from the statute's language and thus appears to be an appropriate means of resolving issues such as those before this court.

The first part of the analysis provides that a federal statute is not precluded by the McCarran–Ferguson Act if the statute specifically relates to the business of insurance within the meaning of 15 U.S.C. § 1012(b). *See Cochran*, 606 F.2d at 464; *Mackey v. Nationwide Ins. Companies*,

724 F.2d 419, 421 (4th Cir.1984); *Gerlach*, 338 F.Supp. at 642. Second, a federal statute's application will not be precluded by the McCarran–Ferguson Act unless the state has enacted law for the purpose of regulating insurance activities. *See SEC*, 393 U.S. at 457–59, 89 S.Ct. at 567–68; *Federal Trade Comm'n v. National Casualty Co.*, 357 U.S. 560, 563–65, 78 S.Ct. 1260, 1261–62, 2 L.Ed.2d 1540 (1958); *United States v. Crocker Nat'l Corp.*, 656 F.2d 428, 452–53 (9th Cir.1981), *rev'd on other grounds sub nom. Bankamerica Corp. v. United States*, 462 U.S. 122, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983). Third, a federal statute's application will only be precluded by the McCarran–Ferguson Act if the activities which brought about the cause of action are the "business of insurance" within the meaning of the McCarran–Ferguson Act. *See SEC*, 393 U.S. at 459–60, 89 S.Ct. at 567–69; *Group Life*, 440 U.S. at 210, 99 S.Ct. at 1072. Finally, application of the federal statute will be precluded only if it would invalidate, impair, or supersede the state law regulating insurance. *SEC*, 393 U.S. at 463, 89 S.Ct. at 570; *Crocker*, 656 F.2d at 453. All four prongs must be satisfied in order to find a federal statute precluded by the McCarran–Ferguson Act. I turn to application of the test to the matter at bar.

First, RICO does not specifically relate to the business of insurance, *see* 18 U.S.C. §§ 1961 & 1962 (listing activities prohibited under RICO), and thus does not fall within the savings clause of the McCarran–Ferguson Act. *See* 15 U.S.C. § 1012(b) ("[n]o act of Congress shall be construed to invalidate ... any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance...."); *see Brownell*, 757 F.Supp. at 534. Second, California has enacted an Insurance Code "extensively 'regulating the business of insurance' ... particularly Article 6.5, Insurance Code of the State of California, §§ 790–790.10 inclusive, entitled 'Unfair Practices.'" *Addrisi v. Equitable Life Assurance Society of U.S.*, 503 F.2d 725, 728 (9th Cir.1974), *cert. denied*, 420 U.S. 929,

95 S.Ct. 1129, 43 L.Ed.2d 400 (1975); *see also Feinstein v. Nettleship Co. of Los Angeles,* 714 F.2d 928, 933 (9th Cir.1983).

The first two prongs of the test having been satisfied, the court must now examine the third part of the analysis and determine whether the practices of New York Life which allegedly give rise to this action are "the business of insurance." The Supreme Court has explained that the McCarran–Ferguson Act exemption is for the "business of insurance," not the "business of insurers":

> The statute did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws "regulating the business of insurance." Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply.

*Group Life,* 440 U.S. at 211, 99 S.Ct. at 1073 (quoting *SEC,* 393 U.S. at 459–60, 89 S.Ct. at 567–69).

There are a variety of ways of characterizing the conduct at issue in this case. One way of characterizing the practices at issue is to describe them as the selling and issuance of life insurance policies. Such a characterization satisfies the third prong of the test since the selling of policies is the business of insurance for McCarran–Ferguson Act purposes. *See SEC v. National Securities, Inc.,* 393 U.S. at 459–60, 89 S.Ct. at 567–69; *Addrisi,* 503 F.2d at 728. Such a characterization, however, fails to address plaintiff's allegations, which for purposes of the motion to dismiss must be viewed as true. Thus, to the extent that the plaintiff alleges that the defendant engaged in mail fraud, it is clear that the gravamen of the suit deals not with the business of insurance but with conduct wholly divorced from what is ordinarily viewed as "the business of insurance." New York Life can hardly be heard to assert that mail fraud is the ordinary business of insurance. I conclude that the

third test is not satisfied and plaintiff's claim survives defendant's challenge.

Moreover, the cause of action does not satisfy the fourth branch of the test, that is whether application of RICO here would invalidate, impair, or supersede state laws. "The test under McCarran–Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by application of federal law." *Miller v. National Fidelity Life Ins. Co.,* 588 F.2d 185, 187 (5th Cir.1979); *see also Mackey,* 724 F.2d at 421; *Hamilton Life Ins. Co. of New York v. Republic Nat'l Life Ins. Co.,* 408 F.2d 606, 611 (2d Cir.1969) ("[t]he plain and unambiguous statutory language is persuasive evidence that the McCarran–Ferguson Act was not intended to preclude the application of these federal statutes to insurance unless they invalidate, impair or supersede applicable State legislation regulating the business of insurance"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 127, 94 S.Ct. 383, 390, 38 L.Ed.2d 348 (1973) ("[o]ur analysis is also to be tempered by the conviction that the proper approach is to reconcile 'the operation of both statutory schemes with one another rather than holding one completely ousted' "); *Crocker,* 656 F.2d at 454 (in analyzing whether federal regulation is barred by the Act, "coordinate federal and state authority should be accommodated when possible and the inferior law should be preempted only to the extent necessary to accomplish the purpose of the law that is supreme"). If RICO does invalidate state insurance laws, then it is barred by the McCarran–Ferguson Act which vests the power to regulate insurance in the states. For the reasons I explain below, the court concludes that the fourth prong of the test is not satisfied in the matter at bar, because the RICO cause of action would not invalidate or supersede California's insurance law.

Defendant argues that a RICO claim would invalidate state insurance law because it would invalidate the California Supreme Court's holding that no private cause of action exists under state law

against insurance companies for statutorily defined unfair business practices. *Moradi–Shalal v. Fireman's Fund Ins. Companies,* 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988). In *Moradi,* the California Supreme Court committed the enforcement of the Unfair Trade Practices Act, Cal.Ins. Code §§ 790–790.10, to the exclusive province of the Insurance Commissioner.[4] Defendant maintains that by providing a private cause of action for claims which are also violations of the Insurance Code, RICO would invalidate *Moradi.*

Defendant asks us to follow the holding in *American Int'l Group, Inc. v. Superior Court,* 234 Cal.App.3d 749, 285 Cal.Rptr. 765 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992), to find that RICO claims against insurance companies supersede state insurance laws and are therefore precluded by the McCarran Act. While *American* is directly in point,[5] it is simply not persuasive, and I must decline to follow it.[6]

In *American,* 234 Cal.App.3d at 758–68, 285 Cal.Rptr. 765, the court found that each prong of the four-part analysis was satisfied and that the plaintiff was therefore precluded from maintaining a RICO claim. I have already explained why I regard the third prong as unsatisfied. I do not find *American's* view on the fourth prong any more persuasive. In concluding that RICO would invalidate state insurance laws, both the *American* court and the defendant ignore the fact that the basis for the RICO claim is not unfair business practices *vel non* but an alleged pattern of fraud. Indeed, in the very case purportedly relied on by the *American* court, the California Supreme Court noted that litigants could still bring traditional fraud claims for actions which might also constitute Insurance Code violations. *See Moradi,* 46 Cal.3d at 304–05, 250 Cal.Rptr. at 126, 758 P.2d at 68 ("[t]he courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions based on such traditional theories as fraud ..."). Because private actions for common law fraud exist side by side with actions under the Insurance Code in California, it cannot be said that a RICO claim based on a pattern of fraud impairs state regulation of insurance in any way. *See Brownell,* 757 F.Supp. at 536–37 (when state fraud claims are not barred by and do not impair state insurance laws, neither do RICO fraud claims impair these laws); *see generally, SEC,* 393 U.S. at 463, 89 S.Ct. at 570 (finding that federal securities regulations did not impair state insurance laws because the federal interest in protecting shareholders was compatible with the state interest in protecting policyholders). Because a fraud-based RICO violation does not impair or supersede state insurance law, the RICO claim in this case is not precluded by the McCarran–Ferguson Act.

Defendant's motion to dismiss plaintiff's eighth cause of action for RICO violations is DENIED.

IT IS SO ORDERED.

---

**4.** Subsequent California appellate court cases have held that a litigant may not "end run" *Moradi* by casting her claim in terms of the Unfair Practices Act of the Business & Professions Code. *See Safeco Ins. Co. of America v. Superior Court of Los Angeles,* 216 Cal.App.3d 1491, 265 Cal.Rptr. 585 (1990); *Maler v. Superior Court of Los Angeles County,* 220 Cal.App.3d 1592, 270 Cal.Rptr. 222 (1990).

**5.** In *American,* 234 Cal.App.3d at 752, 285 Cal. Rptr. 765, the plaintiff sought damages on a number of legal theories all of which arose from misrepresentations made by defendants with respect to a policy for worker's compensation insurance. The only claim which the California Appellate Court addressed was plaintiff's RICO claim which arose out of an alleged pattern of mail and wire fraud.

**6.** Because the issue of whether RICO claims are barred by the McCarran–Ferguson Act is a matter of federal law, I am not bound by the state court's decision. *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 455–56, 62 S.Ct. 676, 678–79, 86 L.Ed. 956 (1942).