50 F.3d 1486
 63 USLW 2616, RICO Bus.Disp.Guide 8778
 MERCHANTS HOME DELIVERY SERVICE, INC., a California
corporation, Plaintiff-Appellant,
v.
FRANK B. HALL & CO., INC., a Delaware corporation;
Prometheus Liquidating Corp., a Delaware corp.; Frank B.
Hall Insurance Brokers, Inc., a Delaware corp.; James
Dwight Ismay, an individual; Terry Don Smalridge, an
individual; Paul C. Carter, an individual, Defendants-Appellees.
MERCHANTS HOME DELIVERY SERVICE, INC., a California
corporation, Plaintiff-Appellant,
v.
FRANK B. HALL & CO., INC., a Delaware corp.; Prometheus
Liquidating Corp., a Delaware corp.; Frank B.
Hall Insurance Brokers, Inc., a Delaware
corporation, Defendants,
and
Paul C. Carter, an individual, Defendant-Appellee.
MERCHANTS HOME DELIVERY SERVICE, INC., a California
corporation, Plaintiff-Appellant,
v.
FRANK B. HALL & CO., INC., a Delaware corporation;
Prometheus Liquidating Corp., a Delaware corp.; Frank B.
Hall Insurance Brokers, Inc., a Delaware corp.; James
Dwight Ismay, an individual; Terry Don Smalridge, an
individual, Defendants-Appellees,
and
Paul C. Carter, an individual, Defendant.
 Nos. 93-56302, 93-56589, 94-55035.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted, March 8, 1995.
Decided March 28, 1995.
 
 Stephen R. Knapp and John B. Wallace, Bishop, Barry, Howe, Haney & Ryder, Los Angeles, CA, and G. Robert Blakey, Notre Dame, IN, for plaintiff-appellant.
 James C. Martin, Crosby, Heafey, Roach & May, Los Angeles, CA, for defendants-appellees.
 Appeals from the United States District Court for the Central District of California.
 Before: BROWNING, BOOCHEVER and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Plaintiff Merchants Home Delivery Service, Inc. ("Merchants") appeals the district court's judgments dismissing Merchants' action against its former insurance broker, Frank B. Hall & Co., Inc. and associated defendants (collectively "Hall"). Merchants' complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). See 18 U.S.C. Secs. 1961-1968. The district court granted Hall's motion for judgment on the pleadings due to the court's determination that section 2(b) of the McCarran-Ferguson Act (15 U.S.C. Sec. 1011, et seq.) precluded the application of RICO to Hall's alleged wrongdoing. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We reverse and remand.
 
 
 2
 * Merchants' complaint alleges: Merchants is a national company engaged in shipping and delivering packages. It retained Hall on a continuing basis to secure numerous insurance policies and to process claims for which Merchants was self-insured. Merchants says that employees of Hall, with Hall's knowledge or acquiescence, defrauded Merchants in three ways: (1) by overbilling Merchants for insurance premiums on actual policies, (2) by billing Merchants for premiums on nonexistent policies, and (3) by billing Merchants for direct, uninsured claims that were never paid to the claimants. Merchants alleges that these fraudulent acts were accomplished through use of the mails and wires, thus bringing them within the scope of RICO.
 
 
 3
 Merchants asserts numerous state law claims in addition to its RICO claims. The district court declined to exercise supplemental jurisdiction over the state law claims, and Merchants is pursuing those claims in state court. Hall moved for judgment on the pleadings (Fed.R.Civ.P. 12(c)), which the district court granted, ultimately disposing of the claims against all defendants in three successive judgments. Merchants timely appealed from each judgment and the appeals were consolidated.
 
 II
 
 4
 We review a judgment on the pleadings de novo. Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir.1993). Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. Id. The district court determined that, irrespective of whether Merchants' complaint states a claim under RICO, judgment in favor of Hall was appropriate because the operation of the McCarran-Ferguson Act makes RICO inapplicable to the facts alleged.
 
 III
 
 5
 Congress enacted the McCarran-Ferguson Act in part to allow the states to regulate the business of insurance free from inadvertent preemption by federal statutes of general applicability. See Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 218, 99 S.Ct. 1067, 1076, 59 L.Ed.2d 261 (1979). Section 2(b) of the Act accomplishes this purpose through a limited "inverse preemption," by directing that a federal law of general applicability does not apply to the "business of insurance" if the federal law conflicts with state laws enacted to regulate that business. See 15 U.S.C. Sec. 1012(b).
 
 
 6
 Section 2(b) provides, in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." Id. The terms of the statute suggest a four part inquiry for determining when Sec. 2(b) precludes the application of a federal statute. See Cochran v. Paco, Inc., 606 F.2d 460, 464 (5th Cir.1979). The McCarran-Ferguson Act precludes the application of a federal statute if: (1) the statute does not "specifically relate" to the business of insurance, (2) the acts challenged under the statute constitute the business of insurance, (3) the state has enacted a law or laws regulating the challenged acts, and (4) the state law would be superseded, impaired or invalidated by the application of the federal statute. Id. All four factors must be satisfied. The parties agree that this well-settled four factor test governs the present dispute.
 
 
 7
 The first and third elements are not at issue here. As Merchants concedes, RICO does not specifically relate to the business of insurance. See 18 U.S.C. Secs. 1961, 1962 (listing activities proscribed by RICO). Also, California has enacted a comprehensive insurance code, which prohibits the acts alleged by Merchants.[1] See Feinstein v. Nettleship Co., 714 F.2d 928, 933 (9th Cir.1983), cert. denied, 466 U.S. 972, 104 S.Ct. 2346, 80 L.Ed.2d 820 (1984); Cal.Ins.Code Secs. 790-790.10 (West 1995). Thus, only the second and fourth elements are disputed.
 
 IV
 
 8
 We first address whether the practices alleged by Merchants fall within the business of insurance under Sec. 2(b). We hold that overcharging for premiums on actual insurance policies is the business of insurance, but that collecting premiums on false policies and charging for unpaid, uninsured claims are not.
 
 
 9
 * The parties contest the proper scope of inquiry concerning whether the acts challenged under RICO constitute the business of insurance. Merchants argues that the court must look only to the wrongful component of the acts alleged, positing that "fraud and theft cannot be the 'business of insurance.' " It finds support for this position in several district court decisions. See, e.g., Thacker v. New York Life Ins. Co., 796 F.Supp. 1338, 1342 (E.D.Cal.1992). Hall argues that this approach is much too narrow, and that the entire relationship between the parties must be examined to determine whether the challenged acts occurred in the business of insurance. Hall's position also has support from several district courts. See, e.g., Wexco, Inc. v. IMC, Inc., 820 F.Supp. 194, 199 (M.D.Pa.1993). The district court adopted Hall's reasoning.
 
 
 10
 Neither party has identified the proper scope of inquiry. The approach put forth by Hall is too broad. The Supreme Court has stated that the McCarran-Ferguson Act "does not exempt the business of insurance companies.... The exemption is for the 'business of insurance[.]' " Royal Drug, 440 U.S. at 210-11, 99 S.Ct. at 1073. Thus, the proper inquiry is whether a particular "practice constitutes the business of insurance," not whether the defendant and the plaintiff transact the business of insurance in general. See Nettleship, 714 F.2d at 931.
 
 
 11
 Merchants' proposed test, however, defines the challenged practice too narrowly. As the Seventh Circuit stated, "it is not helpful to point to a practice forbidden by federal law ... and observe that this practice is not itself insurance." NAACP. v. American Family Mut. Ins. Co., 978 F.2d 287, 294 (7th Cir.1992) (Easterbrook, J.), cert. denied, --- U.S. ----, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993). This interpretation of the rule would read the McCarran-Ferguson Act out of existence. Any practice which violated any federal statute would, by definition, not be the "business of insurance," resulting in all federal statutes applying to the business of insurance with their "full rigor." See id. This is not the result Congress intended. Therefore, we hold that the proper inquiry is whether, taken as a whole, the specific practice being challenged under federal law is a part of the "business of insurance."
 
 B
 
 12
 The Supreme Court has identified three factors to be applied in determining whether a practice constitutes the business of insurance: (1) whether the practice has the effect of transferring or spreading the policyholders' risks, (2) whether the practice is an integral part of the policy relationship between the insurer and the insured, and (3) whether the practice is limited to entities within the insurance industry.[2] See United Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008-09, 73 L.Ed.2d 647 (1982). The Supreme Court has made it clear that the transfer or spreading of the risk is the primary or even "indispensable" characteristic of the business of insurance. Id. at 127, 102 S.Ct. at 3007-08; Royal Drug, 440 U.S. at 211-12, 99 S.Ct. at 1073-74. Our own cases applying these factors also "emphasize that the primary characteristic of the business of insurance is the transferring or spreading of risk." Nettleship, 714 F.2d at 931.
 
 
 13
 Merchants alleges three types of fraudulent practices by Hall: (1) overcharging for premiums on actual policies, (2) collecting premiums on fictitious policies, and (3) collecting payments for uninsured claims which Hall did not actually pay. We address each practice separately.
 
 
 14
 * Overcharging for premiums on actual policies is part of the business of insurance. All three factors are satisfied. First, Merchants actually was a party to an insurance policy which transferred and spread its risks. The payment and collection of premiums is necessary to the risk-spreading transaction; if the premiums are not paid, the policy will lapse and the risk spreading relationship will be terminated. Second, an insurance broker's collection of premiums is integral, though not indispensable, to the relationship between the insured and the insurer. Finally, only in the insurance industry are insurance policies written and insurance premiums collected. Merchants' claim here is not that it was never insured or that its risk was not spread, but simply that it was charged more than it should have been for the insurance coverage it received. This type of transaction is at the core of the "business of insurance."
 
 2
 
 15
 We fail to see, however, how the collection of premium payments for nonexistent policies falls within the business of insurance. Where there is no insurance policy, the first two factors are not satisfied: Merchants' risk is not spread, and there is no relationship at all between it and an insurer. This conclusion is supported by the very wording of the first two factors, which assumes the existence of a "policy." See Nettleship, 714 F.2d at 931 (explaining that inquiries are whether the "policyholder's" risk is spread, and whether the practice is an integral part of the "policy relationship between insurer and insured"). The third factor is arguably not satisfied either. Because no policy was sold at all, this practice comes close to being the "business of fraud," as characterized by Merchants. Money can be fraudulently collected for a nonexistent product in any field. On the other hand, where the products falsely being offered are insurance policies, public policy concerns specific to the business of insurance may be implicated (e.g. there may be a particularly strong public interest concern against such fraud, as it directly affects the existence and reliability of insurance contracts). Therefore, the third factor does not weigh conclusively in either direction.
 
 
 16
 Given the Supreme Court's clear statements that the transfer or spreading of risk is the primary factor to be considered, the absence of this element requires, at a minimum, that the other two factors weigh strongly in Hall's favor in order for its practice to fall within the business of insurance. See SEC v. National Sec., Inc., 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969) ("The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement--these were the core of the 'business of insurance.' ") The existence of a contractual policy relationship is therefore of central, if not essential, importance. Hall has not shown that the practice of collecting premiums on sham insurance policies "relate[s] so closely" to the policy relationship as to outweigh the lack of a policy itself. See id.
 
 3
 
 17
 The third challenged practice, collecting money for false claims to be directly paid by Merchants, is not even arguably the business of insurance. This practice satisfies none of the factors. There is no spreading or transfer of the risk. Indeed, even had the transactions not been fraudulent, the parties always contemplated that Merchants would bear its own risk. There is no policy relationship between Merchants and any insurer. Finally, the practice is not limited to the insurance industry. Merchants could pay these claims itself, without using Hall as an intermediary, or could use a different company as its agent for claims adjustment. Hall simply happens to be an insurance broker which Merchants engaged to administer claims settlement. This practice is not the business of insurance.
 
 V
 
 18
 As some of Hall's alleged practices fall within the business of insurance, it is necessary for us to determine whether the application of RICO to those practices would "invalidate, impair, or supersede" California's laws regulating those practices. We hold the application of RICO to Hall's alleged fraudulent acts is consistent with California's insurance laws.
 
 
 19
 * The parties again argue in favor of widely disparate standards for determining whether a federal law invalidates, impairs or supersedes state insurance regulations. Hall argues that the term "impair" is intended to be a very broad proscription against applying federal law where a state has regulated, or chosen not to regulate, in the insurance industry. Under this construction of Sec. 2(b), Hall argues that the private right of action for treble damages and mandatory attorney fees allowed by RICO would upset the balance struck by California's insurance code, which, in general, allows only administrative enforcement and actual damages. See Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58, 68-69 (1988). Again, Hall draws on district court decisions to support its position. See, e.g., Wexco, 820 F.Supp. at 204. This argument amounts to the contention that Congress intended the McCarran-Ferguson Act to allow states to preempt the field in the regulation of the business of insurance.
 
 
 20
 Merchants counters with a much narrower reading of the McCarran-Ferguson Act's "inverse preemption." Under Merchants' construction, application of a federal law would be precluded only where the federal law expressly prohibited acts permitted by state law, or vice versa. Further, Merchants' argues that the California statute's express statement that it is cumulative with state common law causes of action weighs against Hall's "delicate balance" argument. Merchants has support from several district courts for this position as well. See, e.g., Thacker, 796 F.Supp. at 1343.
 
 
 21
 We have not previously addressed the question of exactly when a federal statute "invalidate[s], impair[s], or supersede[s]" a state law under Sec. 2(b). The Seventh Circuit, however, recently addressed this issue in NAACP v. American Family Mutual Insurance Co., 978 F.2d 287 (7th Cir.1992). In that case, the court was faced with the question of whether the Fair Housing Act could be invoked to prohibit "redlining" by home insurers. As in the present case, state law prohibited the conduct, but allowed only administrative remedies, whereas the federal law allowed a private right of action. See id. at 295. In a very thorough opinion, Judge Easterbrook expressly rejected the "upset the balance" argument and concluded that the narrower "direct conflict" construction of the McCarran-Ferguson Act was appropriate. Id. at 296-97.
 
 
 22
 In reaching its conclusion, the Seventh Circuit analogized to the principles governing federal preemption of state law in areas heavily regulated by federal statute. For example, in the area of nuclear power, despite pervasive federal regulation and a lower cap on liability under federal law, the Supreme Court upheld a state punitive damages award for acts prohibited by both state and federal law. See Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 256, 104 S.Ct. 615, 624, 78 L.Ed.2d 443 (1984). The Seventh Circuit went on to catalog many additional Supreme Court cases upholding cumulative state remedies for conduct deemed wrongful under both state and federal law. American Family, 978 F.2d at 296.[3] Thus, the court concluded that state and federal laws proscribing identical conduct do not conflict with or displace each other, and may coexist under the McCarran-Ferguson Act. Id. at 297.
 
 
 23
 We adopt the Seventh Circuit's well-reasoned approach. The language of Sec. 2(b) is inconsistent with a congressional intent to allow states to preempt the field of insurance regulation. First, Sec. 2(b)'s exemption of federal laws which specifically relate to the business of insurance weighs against a congressional intent wholly to abandon the field to the states. Second, only federal statutes which "invalidate, impair, or supersede" state insurance statutes are "preempted." If Congress had intended to cede the field, it could have said: "No federal statute shall be construed to apply to the business of insurance." Instead, it allowed federal statutes to apply unless they conflict with the states' statutes. The terms of the Act's "inverse preemption" are not so broad as Hall would have it.
 
 
 24
 We hold that the application of a federal statute prohibiting acts which are also prohibited under a state's insurance laws does not "invalidate, impair, or supersede" the state's laws under Sec. 2(b) of the McCarran-Ferguson Act.
 
 B
 
 25
 Under this rule, Sec. 2(b) allows the application of RICO to the present facts. Hall concedes, indeed strenuously argues, that California law prohibits the acts alleged by Merchants. As RICO prohibits these same acts, there is no conflict; RICO does not invalidate, impair, or supersede California law in this context.
 
 VI
 
 26
 We REVERSE the district court's judgments in favor of defendants and REMAND to that court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Merchants argues that certain of Hall's alleged practices are not regulated by the California Insurance Code because the practices are not the business of insurance. This is simply a repetition of Merchants' argument on the second element. The relevant inquiry on the third element is satisfied; to the extent Hall's acts do constitute the business of insurance, it is not disputed that the acts are proscribed by the California Insurance Code
 
 
 [2]
 Hall argues that this three factor analysis should only be applied in the antitrust area, where the "business of insurance" is meant to be defined narrowly. Hall contends that United States Department of the Treasury v. Fabe, --- U.S. ----, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993) supports this position. We disagree. In Fabe, the Supreme Court actually applied the three factors stated above, emphasizing that the acts involved there affected the transfer or spreading of risk. See id. at ----, 113 S.Ct. at 2208-09. On the other hand, Hall is correct that the Court held the business of insurance was to be defined more broadly outside the antitrust area. Id. at ---- - ----, 113 S.Ct. at 2209-10. This is a matter of degree, however, rather than a wholesale change in the inquiry
 
 
 [3]
 Although Silkwood's specific holding was superseded by statute (42 U.S.C. Sec. 2210(s)), the general principle remains viable