539 A.2d 434

**Herbert E. WRIGHT, Robert S. Wright, and Kenneth E. Wright, Appellants,**

**v.**

**NORTH AMERICAN LIFE ASSURANCE COMPANY, A Corporation, and Toner Insurance Consultants of Western Pennsylvania, Inc. t/d/b/a Coordinated Financial Services, and James Monteverde Individually and t/d/b/a Coordinated Financial Services, Appellees.**

Superior Court of Pennsylvania.

Argued June 18, 1987.

Filed March 14, 1988.

274

John J. Braszo, Pittsburgh, for appellants.

Patricia–Liptak McGrail, Pittsburgh, for North American, appellee.

James W. Harvey, Pittsburgh, for Monteverde, appellee.

Before ROWLEY, JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal arises from a judgment entered in the lower court following an order granting summary judgment to the Defendant–Appellees. The action was filed by the Plaintiff–Appellants, seeking refunds of insurance premiums, as well as damages, in a dispute involving several insurance policies. Recovery was sought on several legal theories.

█ In *Harris by Harris v. Easton Publishing Co.*, 335 Pa.Super. 141, 152, 483 A.2d 1377, 1382–83 (1984), our Court stated the following rules regarding the review of an appeal involving the question of the propriety of summary judgment:

> Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975). To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the nonmoving party and any doubts must be resolved against the entry of judgment. *Id.* In doing so, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983). Summary judgment is appropriate only in those cases which are clear and free from doubt. *Id.*

In its order granting summary judgment, the lower court commented that there were no unresolved issues of fact because Plaintiffs had not filed any opposing affidavits. In the opinion which the lower court subsequently filed in this case, it again noted that Plaintiffs neither filed nor presented any counter-affidavits in opposition to affidavits presented by Defendants. In light of these pronouncements, it is appropriate that we point out that a party opposing a motion for summary judgment may file affidavits in opposition if desired, but the failure to file affidavits, depositions, or other materials in opposition to the moving party's motion for summary judgment does not guarantee that the motion will be granted.[1] Sustaining such a motion is only appropriate if there is no genuine issue of material fact, and the applicable law entitles the moving party to judgment. See *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1971). Further, it should be pointed out that while the Appellants filed no counter-affidavits in the lower court in direct opposition to the motion for summary judgment, the record did contain the transcript of the deposition of Plaintiff-Appellant Kenneth E. Wright, and responses by Plaintiffs to interrogatories propounded by the Defendants, which provided testimony and responses in support of the Plaintiffs' pleadings.

1. See Pa.R.Civ.P. 1035(d) regarding the non-moving party's obligation to show the existence of genuine issues for trial.

The record of the proceedings of the lower court shows that the Plaintiffs filed an initial Complaint, and later filed several Amended Complaints, as a result of preliminary objections and other pretrial proceedings in the lower court. As amended, the claims of the Plaintiffs were essentially that they purchased five life insurance policies from Defendant James Monteverde, in his capacity as agent for Defendant North American Life Assurance Company, between June and December, 1981. The Plaintiffs paid the premiums due on these policies for a period of almost two years. Such payments exceeded $39,000. Throughout that time, Defendant Monteverde maintained possession of the policies. The Plaintiffs asserted that on occasion over the next two years they requested physical possession of the policies. Upon finally receiving them, in July, 1983, they purportedly discovered that Monteverde had misrepresented the coverage and the schedule of premiums for the policies. They promptly cancelled the policies, within ten (10) days of the date they were initially received, returned them to the Defendant insurer, and sought a refund of the premiums they had paid. Following the denial of that request, they instituted the instant action, seeking a refund of premiums paid, as well as damages.

In essence, the Plaintiffs' allegations were that their decision to purchase such North American Life Assurance Company policies were based upon false assurances, representations, and information from Mr. Monteverde, and that Plaintiffs relied upon such declarations. The other Defendants were also representatives of Defendant North American Life Assurance Company, and were allegedly involved in communications with the Plaintiffs regarding the policies. The Plaintiffs have proceeded on five theories of recovery: (1) breach of contract; (2) common law fraud, misrepresentation and deceit; (3) violation of the Unfair Insurance Practices Act (Act of July 22, 1974, P.L. 589, No. 205, § 1, et seq., 40 P.S. § 1171.1, et seq.); (4) violation of a right to a ten day period of examination for cancellation of the insurance contracts (see Act of November 5, 1981, P.L. 325, No. 116, § 1, 40 P.S. § 510c.); and (5) violation of the Unfair

Trade Practices and Consumer Protection Law (Act of November 24, 1976, P.L. 1166, No. 260, § 1, et seq., 73 P.S. § 201-1 et seq.). Although the Plaintiffs assert on this appeal that they sought treble damages under the Unfair Trade Practices and Consumer Protection Law, we have found no reference to such a damage request set forth in their Complaint or Amended Complaints.

The lower court determined that the Plaintiffs had requested and paid for the life insurance coverage which they had received. Further, noting that the Plaintiffs had not made any complaint until their discovery that Defendant Monteverde had an amorous relationship with the estranged wife of one of the Plaintiffs, the court found that there was no issue of any material fact. The lower court's opinion makes it evident that it reached the conclusion that the Plaintiffs were pursuing this action as a result of their unhappiness with the situation of Mr. Monteverde's relationship with the spouse, rather than because of any problem regarding the insurance policies. Based upon such factors, the lower court found that no genuine issue of material fact existed, and that the Defendants were entitled to judgment as a matter of law. From our detailed review of the record, we are constrained to disagree with the conclusions of the lower court with regard to several of the Plaintiffs' claims in this case.

■ Relying upon the Plaintiffs' pleadings, the transcript of the deposition testimony of Plaintiff Kenneth Wright, and the Plaintiffs' answers to interrogatories, it is evident that the Plaintiffs have advanced material factual allegations which are sufficient to preclude a grant of summary judgment. In essence, they maintain that Defendant Monteverde, on whom they relied, misrepresented the actual cost of the insurance policies to them, including the escalating schedule of premiums, and also misrepresented pertinent facts regarding coverage. Their reliance upon such misrepresentations was financially detrimental to them. It was also established in the record that when the policies were finally delivered to them in July, 1983, the Plaintiffs

submitted cancellation notices and a request for refunds within ten days of such delivery. All such facts are important in the analysis of the various legal theories upon which the Plaintiffs sought to proceed in this case.

We first examine their reliance upon 40 P.S. § 510c. That statute provides:

> No policy of individual life insurance or endowment insurance shall be delivered in the Commonwealth of Pennsylvania after January 1, 1982 unless it shall have prominently printed on the first page of such policy or attached thereto a notice stating in substance that the policyholder shall be permitted to return the policy within at least ten (10) days of its delivery and to have the premium paid refunded if after examination of the policy, the policyholder is not satisfied with it for any reason. If a policyholder pursuant to such notice, returns the policy to the insurer at its home or branch office or to the agent through whom it was purchased, it shall be void from the beginning and the parties shall be in the same position as if no policy had been issued.

As noted earlier, the Plaintiffs sought a recovery of all insurance premiums paid from the 1981 inception date of the policies through July, 1983. Based upon the allegations in their Complaint and Amended Complaints, as well as in the deposition testimony of Plaintiff Kenneth Wright and the answers to interrogatories, it would appear that a genuine issue of material fact is presented as to whether the Plaintiffs first received copies of the insurance policies in issue on or about July 19, 1983. Further, a factual issue is established as to whether within ten days thereafter, they expressed dissatisfaction with the policies, and sought a refund of the premiums paid. Thus, there appears to be no justification in the record for the granting of summary judgment to Defendants with regard to Plaintiffs' claims for refunds, based upon the foregoing statutory provision. Accordingly, the lower court erred in granting summary judgment as to that aspect of the Plaintiffs' case.

█ The Plaintiffs also sought a refund of premiums by claims resting upon the provisions of the Pennsylvania Unfair Insurance Practices Act. Section 5 of that statute (40 P.S. § 1171.5) prohibits the making of any statement or sales presentation which misrepresents the benefits, advantages, conditions, or terms of any insurance policy. That prohibition would seem to have application to the claims of the Plaintiffs in this case. However, the provisions of this statute were not intended to confer a right of private action. Rather, the Unfair Insurance Practices Act vests enforcement powers in the Pennsylvania Insurance Commissioner. See *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981). Therefore, the Plaintiffs may not proceed in this case on any claim wherein standing is based upon the provisions of the Unfair Insurance Practices Act. However, it must be noted that merely because the practices of a defendant insurer may violate the provisions of that Act, a plaintiff is not precluded from pursuing civil remedies to remedy such conduct on other allowable grounds. See *Nagle v. American Casualty Company*, 317 Pa.Super. 164, 463 A.2d 1136 (1983). Accordingly, although the lower court was justified in granting summary judgment as to the claims of the Plaintiffs based upon the Unfair Insurance Practices Act, such a disposition would not operate to foreclose the Plaintiffs from seeking a refund remedy on other allowable legal theories.

The Plaintiffs also sought a refund and other relief under the provisions of the Unfair Trade Practices and Consumer Protection Law. Our Court has held that an insured may maintain a private cause of action under that law even though the allegations in his complaint fall within the purview of acts and practices prohibited by the Unfair Insurance Practices Act. *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986). Section 201–2(4)(xvii) of the Consumer Protection Law defines "unfair methods of competition" as including "engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xvii). Such general lan-

guage is certainly broad enough to encompass the claims of unfair practices which have been asserted by Plaintiffs in this case. Our Supreme Court has determined that the Consumer Protection Law must be liberally construed, and that the section of the statute quoted above is a general antifraud provision, intended by the legislature to be a broad prohibition against a wide variety of unfair acts. *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974). With regard to the particular conduct of the Defendants which has been alleged in this action by the Plaintiffs, it can be said that Section 201–2(4)(xvii) would have coverage.

■ Section 201–9.2 (73 P.S. § 201–9.2) of the Consumer Protection Law authorizes a private action by an individual to remedy actions declared unlawful under the Act, and to recover actual and other damages. However, that statutory provision limits such a right to any person who purchases or leases goods or services primarily for "personal, family or household purposes". In the instant case, based upon the facts of record, it appears that the Plaintiffs may have purchased the policies from Defendants for business purposes. However, the record is certainly not clear on that point, and the lower court could not have properly granted summary judgment, on the Consumer Protection Law claims, based upon a conclusion that the policies were purchased for business purposes. The lower court did not address that issue at all in its opinion. Thus, it is inappropriate that our Court reach any decision regarding whether or not the Plaintiffs may obtain any recovery under the Unfair Trade Practices and Consumer Protection Law, based solely on the issue of whether their purchases of insurance were primarily for personal, family or household purposes. Such questions may only be resolved after further proceedings in the lower court. At this stage of the proceedings, we must remand this case because the lower court should not have granted summary judgment against the Plaintiffs as to claims based upon the provisions of the Consumer Protection Law.

■ The Plaintiffs also sought a refund of the premiums they paid, on the basis of common law trespass claims of fraud, misrepresentation, and deceit. In the case of *Pekular v. Eich, supra,* our Court addressed the question of whether the enactment of the Unfair Insurance Practices Act precluded an insured from pursuing such a common law cause of action for fraud, in connection with improper conduct arising in the marketing of an insurance policy. In *Pekular,* it was held that an insured still retained the right to pursue such common law remedies, despite that legislative enactment. We therefore conclude that the lower court should not have granted summary judgment with respect to the Plaintiffs' claims based upon common law fraud and misrepresentation theories.

■ Finally, we address the issue of whether summary judgment was properly granted as to the Plaintiffs' claims of a purported breach of contract by the Defendants. While there was technically no specific contract breach asserted in this case, if a party can establish that he was induced to enter into a contract by fraud or misrepresentation, he can establish an entitlement to rescind the contract. See *National Building Leasing, Inc. v. Byler,* 252 Pa.Super. 370, 381 A.2d 963 (1977). The deposition testimony of Plaintiff Kenneth Wright and the answers to interrogatories, together with the Plaintiffs' pleadings, all raised material issues of fact as to whether fraud or misrepresentation by Defendant Monteverde occurred which induced them to enter into the insurance contracts at issue in this case. In light of these matters of record, we find that the lower court erred in granting summary judgment against the Plaintiffs on their contract claims.

The judgment of the lower court is affirmed only with regard to the granting of summary judgment as to the Plaintiff–Appellants' claims based upon the Pennsylvania Unfair Insurance Practices Act. In all other respects, summary judgment should not have been granted, and the judgment of the lower court is reversed. The case is

remanded for further proceedings in the lower court. Jurisdiction is relinquished.