Nicholas SENICH, et al., Plaintiffs,

v.

**TRANSAMERICA PREMIER INSURANCE COMPANY, et al., Defendants.**

Civ. A. No. 90–299.

United States District Court,
W.D. Pennsylvania.

Sept. 18, 1990.

Howard A. Specter, Elaine Specter, George Mahfood, Pittsburgh, Pa., for plaintiffs.

Ann M. Parrent, Morrison & Foerster, New York City, and C. Richter Taylor, Jr., Mansmann, Cindrich & Titus, Pittsburgh, Pa., for defendants.

## ORDER

MENCER, District Judge.

AND NOW, this 18th day of September 1990, after the plaintiffs, Nicholas Senich, et al., filed an action in the above-captioned case, and after the defendants filed a motion to dismiss, and after a Report and Recommendation was filed by the United States Magistrate, and the parties were granted ten days in which to file objections thereto, and upon consideration of the objections filed by the plaintiffs, and upon independent review of the pleadings, and the Magistrate's Report and Recommendation, which is adopted as the opinion of this Court,

IT IS ORDERED that the defendants' motion to dismiss is granted.

## MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate.

I. *Recommendation:*

It is respectfully recommended that the defendants' motion to dismiss be granted.

II. *Report:*

Presently before the Court for disposition is the defendants' motion to dismiss.

The plaintiffs commenced this action[1] based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and various pendent state theories of liability. The defendants now allege that because this action is not properly commenced under RICO, that federal jurisdiction is lacking and that the entire complaint should be dismissed.

The defendants have moved for dismissal on the grounds that plaintiffs' federal RICO claims are barred by the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, which provides in part that:

No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance ... 15 U.S.C. § 1012(b).

The McCarran–Ferguson Act was intended to preserve the realm of insurance regulation in the various states and to bar federal incursion in that field absent specific federal statutory language to the contrary. *Group Life v. Royal Drug,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979); *Cochran v. Paco Inc.,* 606 F.2d 460 (5th Cir. 1979).

If the defendants' premise is correct, then federal subject matter jurisdiction is lacking, and the RICO claims must be dismissed. Additionally, the defendants argue that if the federal claims are dismissed, the pendent state claims should also be dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lovell Mfg. v. Export–Import Bank of the U.S.,* 843 F.2d 725 (3d Cir.1988).

In establishing the McCarran–Ferguson Act ("Act"), Congress intended to leave the regulation of the insurance industry to the states. 15 U.S.C. § 1011. The Act bars application of federal law if (1) the federal statute under which a party claims entitlement does not specifically relate to the business of insurance; and (2) permitting claims to proceed under the federal statute would "invalidate, impair, or supercede" state laws that regulate the business of insurance. 15 U.S.C. § 1012(b).

Counts One and Two of the plaintiffs' complaint are based on the RICO statute.[2] It is clear that RICO does not specifically relate to the business of insurance, and the plaintiffs do not contend otherwise. They argue that the application of RICO does not invalidate, impair, or supercede the insurance laws of Pennsylvania. They also assert that their RICO claims are predicated upon mail fraud, and that federal mail fraud statutes do not invalidate, impair, or supercede Pennsylvania insurance laws. Lastly, they argue that this action should not be dismissed because state law does not bar private rights of action for common law fraud.

Initially we note that Pennsylvania has enacted comprehensive laws which regulate the business of insurance, See, 40 P.S. § 1 *et seq.*, and has established an Insurance Department "which is charged with the execution of the (state's) laws in relation to insurance." 40 P.S. § 41. In Pennsylvania, any of the following acts constitute the business of insurance, whether effected by mail or otherwise: the issuance, delivery, or solicitation of insurance contracts; the collection of premiums or assessments for such contracts; or

---

**1.** This suit is one of three suits filed in this Court involving alleged forced-placed collateral protection insurance ("CPI") as it pertains to individuals who purchased motor vehicles and financed those purchases through Mellon Bank, N.A. or Mellon Bank (East) (collectively referred to as "Mellon"). In Civil Action No. 89–1326, the defendants are the various Mellon entities. In Civil Action No. 90–299, the defendants are various components of Transamerica Premier Insurance Company, and in Civil Action No. 90–300, the defendants are Balboa Insurance Company and other insurance/management companies. The defendants in the latter two cases are the companies who underwrote the CPI for Mellon on behalf of its borrowers.

**2.** The remaining counts of the complaint allege violations of Pennsylvania statutory and common law.

transactions subsequent to the execution of such contracts. 40 P.S. § 46. Further, the Insurance Commissioner is authorized to investigate and examine the business practices of insurance companies and may bring an action in state court against companies who violate the state's insurance laws. *Id.*

Included in the plaintiffs' complaint are allegations that their premiums were excessive; that they were charged premiums for insurance that did not protect them; that their lenders received illegal commissions and kickbacks from Transamerica when insurance was purportedly purchased on the plaintiffs' behalf; and that plaintiffs were misled as to the terms of the CPI they received.

With respect to the imposition of premium rates, Pennsylvania has enacted the Casualty and Surety Rate Regulation Act ("Rate Act"), 40 P.S. § 1181 *et seq.*, which provides that "[r]ates shall not be excessive" and requires insurance companies to gain approval from the Pennsylvania Department of Insurance for their proposed premium rates. 40 P.S. §§ 1183–1184. In addition, the Rate Act provides for an administrative procedure whereby persons "aggrieved with respect to any filing which is in effect" may file complaints with the Insurance Commissioner and have a hearing. 40 P.S. § 1185(b). It is well recognized that the fixing of premium rates is encompassed within the business of insurance. *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 459–460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). It also is clear that since Pennsylvania insurance law extensively regulates the fixing of such rates, Plaintiffs' RICO claims, under which they characterize their premium grievances, would "invalidate, impair, or supercede" the state's laws. See, *Richhart v. Metropolitan Life Ins. Co.*, 1990 WL 39268, 1990 U.S. Dist. LEXIS 3597 (E.D.Pa. March 30, 1990).

With respect to the contention that plaintiffs' lenders received illegal kickbacks and commissions from Transamerica upon purchasing insurance for plaintiffs, Pennsylvania insurance laws regulate such conduct. Under 40 P.S. §§ 275–276, the payment of rebates and inducements are explicitly prohibited. If lenders are found to have acted as unlicensed brokers in such regard, the Insurance Commissioner is authorized to impose penalties. 40 P.S. § 253. In addition, Pennsylvania's Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1 *et seq.*, prohibits the unfair or deceptive practice of "paying ... giving or offering to pay ... as inducement to insurance, any rebate of premiums". 40 P.S. § 1171.5(a)(8). Thus, plaintiffs' allegations in this regard are clearly regulated under state law.

As to the claims that plaintiffs were misled about the terms of the CPI they received, the UIPA expressly prohibits unfair or deceptive acts which "[m]isrepresent(s) the benefits, advantages, conditions or terms of any insurance policy". 40 P.S. § 1171.5(a)(1)(i). Moreover, the UIPA was not intended to confer a private cause of action. *Wright v. North American Life Assurance Co.*, 372 Pa.Super. 272, 539 A.2d 434, 438 (1988) (citations omitted). Rather, the UIPA vests enforcement powers in the Pennsylvania Insurance Commissioner. *Id.* Thus, plaintiffs' attempt to pursue their claims of misrepresentation under RICO would "invalidate, impair, or supercede" Pennsylvania insurance law.

The plaintiffs also argue against dismissal of this action because their RICO claims are predicated on mail fraud, and because state law allows insureds to bring private rights of action for common law fraud and for unfair trade practices against their insurers. However, like the RICO statute, the mail fraud act does not specifically refer to the business of insurance, and it is not exempt from the McCarran–Ferguson Act. *United States v. O'Brien*, 501 F.Supp. 140, 141 (E.D.Pa.1980). Furthermore, regardless of whether state law permits a private right of action under common law and statutory theories, it does nothing to alter the McCarran–Ferguson Act's exclusion of federal causes of action in the insurance field absent specific statutory authorization. *Richhart, supra*, slip op. at 1990 WL 39268, LEXIS 3597 (dismissing plaintiffs' RICO claims as they are barred by the McCarran–Ferguson Act).

In this instance, it would appear that while alleging RICO violations, the plaintiffs are attempting to reach the defendants' underlying insurance practices which are subject to the comprehensive Pennsylvania regulatory scheme. Since the RICO statute does not specifically relate to the business of insurance, and since allowing plaintiffs' claims to proceed under RICO would "invalidate, impair, or supersede" state insurance law, plaintiffs' RICO claims are barred by the McCarran–Ferguson Act. Without an independent basis for federal subject matter jurisdiction, the plaintiffs' agree that their pendent state claims should also be dismissed. *United Mine Workers v. Gibbs, supra; Lovell Mfg. v. Export–Import Bank of the U.S., supra.*

Therefore, based on the forgoing, it is respectfully recommended that the defendants' motion to dismiss be granted.

### ORDER

AND NOW, this 9th day of August, 1990, the Magistrate's Report and Recommendation having been filed,

IT IS ORDERED that the parties shall have ten (10) days in which to file objections to said Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights.