WEXCO INCORPORATED; Amish Country, Inc.; Baker–Hydro Incorporated; Fox Pool Corporation, successor to Amish Country, Inc.; Fox Pool Canada, Limited; International Vectors, Ltd., t/d/b/a Pen–Fabricators; MFL Inc.; Pacific Marquis, successor to MFL, Inc. and Pacific Marquis of Colorado; and York Chemical Corporation, Plaintiffs,

v.

IMC, INC.; Thomas P. Reusse; Illinois Insurance Exchange; Gary D. Hackley; ALR Risk Managers, Inc.; Thomas A. Laffey; Thomas J. Lundon; Corroon & Black of New Jersey, Inc. (now known as Willis Corroon Corp. of New Jersey); Sven J. Grotrian; Sidney R. Blackman; Nordic Special Risk Agency; and Transco Syndicate No. 1, Limited, Defendants.

Civ. A. No. 1:CV–92–0758.

United States District Court, M.D. Pennsylvania.

April 16, 1993.

Wentworth D. Vedder, Sara A. Austin, Morris & Vedder, York, PA, for plaintiffs.

David E. Lehman, Harrisburg, PA, Steven S. Hoge, Arnold & McDowell, Minneapolis, MN, for defendants IMC, Inc. and Thomas P. Reusse.

H. Marc Tepper, Carl Anthony Maoi, Margolis, Edelstein, Scherlis & Kraemer, Philadelphia, PA, for defendants Illinois Ins. Exchange, Gary D. Hackley and Transco Syndicate No. 1, Ltd.

Anthony Stefanon, Stefanon & Glace, Harrisburg, PA, for defendants Thomas A. Laffey, Thomas J. Lundon, Corroon & Black of New Jersey, Inc., Sven J. Grotrian and Sidney R. Blackman.

Patrick C. Carey, Fine & Wyatt, P.C., Scranton, PA, for Nordic Special Risk Agency.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court are four motions to dismiss submitted by (1) THE IIE DEFENDANTS: defendants Transco Syndicate No. 1, Ltd. ("Transco"), Illinois Insurance Exchange ("IIE"), ("Transco"), and Gary D. Hackley; (2) DEFENDANT NORDIC SPECIAL RISK AGENCY ("Nordic"); (3) THE ALR DEFENDANTS: defendants ALR Risk Managers, Inc. ("ALR"), Thomas A. Laffey, Thomas J. Lundon, Corroon & Black, Sven J. Grotrian, and Sidney R. Blackman; and (4) THE IMC DEFENDANTS: defendants IMC, Inc. ("IMC") and Thomas P. Reusse. Each is ripe for disposition.

In an initial examination, the court determined that the briefing on one specific issue, the McCarran–Ferguson Act, was insufficient. Hence the court ordered submission of supplementary briefs on the issue; they have since been submitted.

### Background

The dispute among the parties concerns an excess insurance liability policy purchased by plaintiff Wexco for itself and its subsidiaries. An examination of the complaint reveals these underlying allegations:

Defendant ALR is a New Jersey corporation which acted as a local insurance agency for plaintiff Wexco in the procurement of excess liability insurance for Wexco and its wholly-owned subsidiaries for the policy year March 1988–March 1989. ALR submitted a proposal and then issued an insurance binder for such coverage through a policy to be ultimately issued by defendant insurer IIE.

The excess liability policy was obtained by ALR through defendant broker IMC and was purportedly issued by IIE and underwritten by defendant Transco, with a liability limit of $3.5 million. ALR invoiced Plaintiffs $200,000 for the policy, which included a $10,000 commission to ALR and its agents. At various times during the policy year, Plaintiffs decided that they wished to increase their excess policy limit (to $5.5 million) and that they wished to add an additional subsidiary to the policy. They contacted ALR which accomplished the requests through IMC and invoiced Plaintiffs accordingly. Plaintiffs paid the charges.

On September 14, 1990, plaintiff Wexco was sent a letter from IMC's counsel recounting IMC's recent discovery that one of its employees had created fictitious insurance policies and pocketed the premiums. One of those policies was the excess insurance policy purchased by Plaintiffs.

On September 13, 1990, a similar letter was sent by IMC's counsel to the Pennsylvania Insurance Commissioner. It informed the Commissioner that dishonest activities on the part of an IMC employee, Duane Krippner, had been discovered in August, 1990. The letter outlined Krippner's responsibilities with IMC and noted the form of Krippner's misconduct in creating fictitious policies.[1] It stated that Krippner's miscon-

---

1. According to counsel's letter to the Pennsylvania Insurance Commissioner, Krippner would assure agents of coverage and create fictitious invoices to IMC, resulting in IMC's billing of the local agents and payment by the agents for the premiums to IMC. Krippner would intercept the IMC checks to IIE's broker, deposit them in his own account and prepare fictitious policy docu-

duct was implicated in connection with seven IIE policies, one of which was issued to a Pennsylvania insured, plaintiff Wexco. The letter represented that IMC had audited and determined that Krippner was working on his own and not in collusion with other employees.

According to the letter sent to the Insurance Commissioner, the only excess coverage truly established with the ultimate insurer IIE for Wexco and its subsidiaries was a policy with a limit of $1,000,000, effective March, 1988 through March, 1989; the associated premium was $127,198.[2] On the other hand, the IIE excess policy as described by the documents in the possession of Wexco had ultimate limits of $5,500,000, with a premium cost of $292,620.

According to Plaintiffs, they have paid $164,024.76 in extra premium costs for nonexistent coverage. Their complaint asserts common law claims of contract reformation, fraud, negligence, breach of fiduciary duty, and broker malpractice, as well as claims under two federal statutes, the Lanham Act and the Racketeer Influenced and Corrupt Organization Act ("RICO"), against all Defendants. However, the Lanham Act counts were voluntarily dismissed on November 13, 1992.

### Legal Discussion

### I. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In examining a Rule 12(b)(6) motion, the court must decide whether, even if the plaintiff could prove all her allegations, she would be unable to prevail. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). The moving party has the burden of showing this. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980); *Mortensen*, 549 F.2d at 891. When facing a 12(b)(6) motion, the plaintiff is afforded certain protections. The material allegations of her complaint are taken as true and construed in the light most favorable to her. *Pennsylvania House, Inc. v. Barrett*, 760

F.Supp. 439, 449 (M.D.Pa.1991). However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id.* at 449–50 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). When the court addresses a 12(b)(6) motion, it may dismiss the plaintiff's complaint "only if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enters. Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984).

### II. RICO and The McCarran–Ferguson Act

All Defendants have argued that, as a matter of law, Plaintiffs' RICO claim is precluded by the McCarran–Ferguson Act ("McCarran–Ferguson"), 15 U.S.C. § 1011, *et seq.* As will be discussed below, the determination whether a RICO claim is precluded by McCarran–Ferguson is a fact-specific one.

### A. *The Motive Behind Passage of McCarran–Ferguson, and the Act's Relevant Language*

McCarran-Ferguson was enacted by Congress in response to the United States Supreme Court's decision in *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Prior to *South–Eastern Underwriters*, an insurance policy was not considered a transaction in commerce. *See Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 183, 19 L.Ed. 357 (1869). Rather, regulation of insurance transactions was considered to be within the purview of the individual states. However, in *South–Eastern Underwriters*, the Supreme Court held that insurance transactions were encompassed by the Commerce Clause of the federal Constitution and thus susceptible to federal regulation. *Securities & Exchange Comm'n v. National Securities, Inc.*, 393 U.S. 453, 458, 89 S.Ct. 564, 567, 21 L.Ed.2d 668 (1969) (recounting effect of *South–Eastern Underwriters*).

---

ments to be forwarded to the local agents. (Complaint, Exhibit I.)

**2.** According to the complaint, with state tax and commissions, the total premium cost to Plaintiffs of the policy actually issued by IIE would have been $137,373.94.

McCarran-Ferguson, passed a year later, was the ultimate result of Congress' concern about the effect of the *South–Eastern Underwriters* decision on the states' traditional regulation of insurance. *Id.* As the Supreme Court was to note in 1946, in passing McCarran–Ferguson, Congress acted broadly "to give support to the existing and future state systems for regulating and taxing the business of insurance." *Id.* (quoting *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946)).

The relevant portion of McCarran–Ferguson is found at 15 U.S.C. § 1012:

> **§ 1012. Regulation by State law; Federal law relating specifically to insurance; applicability of certain Federal laws after June 30, 1948**
>
> **(a) State regulation.** The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> **(b) Federal regulation.** No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance; Provided, That after June 30, 1948 ... the Sherman Act, and ... the Clayton Act and ... the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. § 1012(a), (b). Thus, under McCarran–Ferguson, the states regained their prior authority to regulate the business of insurance. Henceforth, "[i]f Congress intended to invoke its Commerce Clause powers to occupy part of the field of insurance regulation, it would expressly say so." *Cochran v. Paco, Inc.,* 606 F.2d 460, 463 (5th Cir.1979) (addressing McCarran's preclusion of actions under Truth in Lending Act).

## B. *Application of McCarran–Ferguson*

■ A number of federal district courts, one federal circuit court and one state court have considered McCarran–Ferguson preclusion issues involving RICO claims.[3] None of these courts' decisions are mandatory authority for this court, but the court has reviewed all of these cases. Nearly all of these courts explicitly or implicitly applied the same test in order to determine if a RICO claim was barred. Preclusion by McCarran–Ferguson of a federal action is indicated if: (1) the federal statute under which the allegedly precluded action is brought (here, RICO) does not specifically relate to the "business of insurance"; (2) the complained-of activities constitute the "business of insurance"; (3) the relevant state has enacted laws for the purpose of regulating these complained-of activities; and (4) the application of the federal statute would "invalidate, impair or supersede" such state laws. *LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F.Supp. 820, 826 (N.D.Cal.1992) (citing *Cochran v. Paco, Inc.,* 606 F.2d 460, 464 (5th Cir.1979)). This court will utilize this test in its examination.

---

3. See *Dana Corp. v. Blue Cross & Blue Shield Mutual of N. Ohio,* 900 F.2d 882, 888 (6th Cir. 1990); *First Nat'l Bank v. Sedgwick James of Minnesota, Inc.,* 792 F.Supp. 409, 417 (W.D.Pa. 1992); *Thacker v. New York Life Ins. Co.,* 796 F.Supp. 1338, 1341 (E.D.Cal.1992); *Kentucky Cent. Life Ins. Co. v. LeDuc,* 814 F.Supp. 820, 826 (N.D.Cal.1992); *Elliott v. ITT Corp.,* 764 F.Supp. 102, 104 (N.D.Ill.1991); *Richhart v. Metropolitan Life Ins. Co.,* Civ. A. No. 89–1725, 1990 WL 39268 at *2, 1990 U.S.Dist. Lexis 3597 at *5 (E.D.Pa. March 30, 1990); *Senich v. Transamerica Premier Ins. Co.,* 766 F.Supp. 339, 340 (W.D.Pa.1990); *Becks v. Emery–Richardson, Inc.,* No. 86–6866, 1990 WL 303548 at *13 (S.D.Fla. Dec. 21, 1990) (adopting magistrate's report & recommendation); *Washburn v. Brown,* No. 81 C 1475, 1986 WL 7062 at *3 (N.D.Ill. June 17, 1986); *American Int'l Group, Inc. v. Superior Court,* 234 Cal.App.3d 749, 285 Cal.Rptr. 765, 770 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992).

See also *Contour Medical Supply, Inc. v. State Farm Mut. Auto. Ins. Co.,* Civ. A. No. 92–2588, 1992 WL 212433 at *2 (E.D.Pa. Aug. 31, 1992); *Chamberlain v. State Farm Mut. Auto. Ins. Co.,* Civ. A. No. 90–7070, 1991 WL 108688 at *4 (E.D.Pa. June 13, 1991); *Brownell v. State Farm Mut. Ins. Co.,* 757 F.Supp. 526, 536–37 (E.D.Pa. 1991) (all three cases involve peer review process, explicitly held *not* to be a part of "the business of insurance" in *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)).

## (1)

### Prong 1: The Subject Federal Statute

■ The initial step in applying McCarran–Ferguson to determine if a plaintiff's action under another federal statute is precluded in deference to state law is to determine if the federal statute at issue "specifically relates to the business of insurance." 15 U.S.C. § 1012(b). If it does, then Congress has made its specific intent to invoke its Commerce power in the insurance arena clear, and that federal statute will apply, unhampered by the preclusive reach of McCarran–Ferguson. The case law clearly establishes that the RICO statute does not relate to the "business of insurance," no matter how the latter term is defined,[4] and the captioned Plaintiffs do not dispute this conclusion.[5]

## (2)

### Prong 2: Were the Activities the Business of Insurance?

■ It is the second prong of the test, inquiring whether the Defendants' activities constitute the "business of insurance," that is largely responsible for the varied holdings of courts which have considered whether a RICO claim is precluded by McCarran–Ferguson.[6] Congress' choice of the phrase "the business of insurance" in McCarran–Ferguson is viewed as a tacit recognition that states would not have the paramount power to regulate *all* activities of insurance companies. "Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute [McCarran] apply." *National Securities,* 393 U.S. at 459–60, 89 S.Ct. at 568. The United States Supreme Court has twice described what is encompassed within the "business of insurance" under McCarran–Ferguson:

> [I] The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the rela-

---

4. *See, e.g., First Nat'l Bank v. Sedgwick James of Minnesota, Inc.,* 792 F.Supp. 409, 418 (W.D.Pa. 1992) (declared purpose of RICO to eradicate organized crime; RICO does not address or make reference to business of insurance); *Washburn v. Brown,* No. 81 C 1475, 1986 WL 7062 at *3 (N.D.Ill. June 17, 1986) (RICO does not refer to business of insurance; RICO intended to have general application).

5. However, as this memorandum has explained, Plaintiffs' conclusion that a federal statute must specifically relate to the business of insurance before preclusion of an action under that statute by McCarran–Ferguson will occur is incorrect. Plaintiffs' description of the applicable test, (Plaintiffs' supplementary brief at 3), is not correct on that point. Furthermore, Plaintiffs' later description of the test as one for "exemption from the McCarran–Ferguson exclusion," (*id.* at 5) is incorrect.

6. *See, e.g., Dana Corp.,* 900 F.2d at 888 (no bar to RICO claim; employer's agreement with Blue Cross to administer employer's benefits plan not "business of insurance"); *Sedgwick James,* 792 F.Supp. at 417 (no bar to RICO claim; credit enhancement insurer's scheme to find borrowers unable to obtain credit and serve as surety for

their lenders was not "business of insurance"); *Thacker,* 796 F.Supp. at 1341 (no bar to RICO claim; mail fraud is never the "business of insurance"); *LeDuc,* 814 F.Supp. at 827 (RICO claim barred; company's misrepresentation of its financial condition and real estate investments to its agents in order to induce them to sell—and public to purchase—its insurance and annuities was "business of insurance"); *Richhart,* 1990 WL 39268 at *2, 1990 U.S.Dist. Lexis 3597 at *5–7 (RICO claim barred; plaintiffs did not dispute that defendants' activities in defrauding plaintiffs into purchasing insurance were "business of insurance"); *Senich,* 766 F.Supp. at 340–41 (RICO claim barred; defendant's paying of kickbacks to lenders for requiring purchase of collateral protection insurance for financed motor vehicle purchases and defendant's misleading of policyholders about terms of collateral policies were "business of insurance"); *Washburn,* 1986 WL 7062 at *4 (no bar to RICO claim; reinsurance company's attempt to hide insufficient reserves from its policyholders, stockholders and the state, by a paper cession of 90% of its business to another reinsurance company was not "business of insurance"); *American Int'l Group,* 285 Cal.Rptr. at 771–72 (RICO claim barred; misrepresentation in terms of workers' compensation insurance policy encompassed in "business of insurance"). (For complete citations see n. 3, *supra.*)

tionship between the insurance company and the policy-holder.

[II] [T]hree criteria [identified as] relevant in determining whether a particular practice is part of the "business of insurance" [are] ... *first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry. None of these criteria is necessarily determinative in itself. . . .

[I] *Id.* at 460, 89 S.Ct. at 568–69 (addressing preclusion of securities claim by McCarran–Ferguson); [II] *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) (addressing preclusion of antitrust claim by McCarran–Ferguson).

The court believes that the challenged activities of Defendants are encompassed within the "business of insurance" as that clause has been interpreted by the Supreme Court. The captioned action directly concerns misrepresentations made in the sale or non-sale of an excess insurance policy through various, apparently licensed agent and broker Defendants to Plaintiff insureds. "[T]he authorization of agents to solicit individual or group policies and the acceptance or rejection of coverages tendered by brokers is covered within the ambit of [']business of insurance[']" for purposes of McCarran–Ferguson. *Grant v. Erie Ins. Exch.*, 542 F.Supp. 457, 462 (M.D.Pa.1982), *aff'd without opinion*, 716 F.2d 890 (3d Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983) (citing *Owens v. Aetna Life & Cas. Co.*, 654 F.2d 218, 226 (3d Cir. 1981)). There is neither record evidence nor argument that the sale activities surrounding the subject policy did not involve solely insurance industry entities. No matter how much coverage the subject policy offered, its sale certainly had the effect of transferring

risk, and just as certainly formed an integral part of a policy relationship between the insurer and the insured.

Plaintiffs argue that some activities may contain not only elements of insurance, but elements of other fields as well, and that when this is so, wise courts should characterize such activities narrowly and construe that they are not part of the "business of insurance." In support, they cite *First National Bank v. Sedgwick James of Minnesota, Inc.*, 792 F.Supp. 409, 418 (W.D.Pa.1992) (RICO claim not barred by McCarran–Ferguson). However, the source of the statement in *Sedgwick James* was *Federal Trade Commission v. Manufacturers Hanover Consumer Services, Inc.*, 567 F.Supp. 992, 995 (E.D.Pa.1983) (no preclusion of FTC investigation by McCarran–Ferguson). *Manufacturers Hanover*, and two of the three other cases cited by the *Sedgwick James* court, were cases in which lenders allegedly misrepresented to borrowers that they must purchase particular credit insurance in order to obtain the loans they sought.[7] While such cases did involve the sale of insurance policies, each of these courts found that it was the business of *credit* that was involved, rather than the "business of insurance." The respondents were in the business of extending credit, and it was the credit transaction and borrower-creditor relationship that was at issue in these cases rather than the insurer-insured relationship. *See Manufacturers Hanover*, 567 F.Supp. at 994–96.[8]

The court agrees with the conclusions of these courts cited in *Sedgwick James*, all of whom were merely applying the factors cited by the Supreme Court as relevant to the "business of insurance" determination. However, the court does not believe that this "narrow characterization" approach should be extended beyond its original application to characterize fraud as an "element of another field" such that, in the presence of fraud allegations, McCarran–Ferguson necessarily

---

**7.** The remaining two cases were *Federal Trade Commission v. Dixie Finance Co.*, 695 F.2d 926 (5th Cir.), *cert. denied*, 461 U.S. 928, 103 S.Ct. 2088, 77 L.Ed.2d 299 (1983) (no preclusion of FTC investigation by McCarran–Ferguson) and *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill.

1991) (no preclusion of RICO claim by McCarran–Ferguson).

**8.** *See also Dixie Finance*, 695 F.2d at 931; *Elliott*, 764 F.Supp. at 1051.

loses effect because "fraud is not the 'business of insurance.'" The *Sedgwick James* opinion cited to *Washburn v. Brown*, No. 81 C 1475, 1986 WL 7062 (N.D.Ill. June 17, 1986), in which the court found that mail fraud was not the "business of insurance." *Sedgwick James*, 792 F.Supp. at 419. Furthermore, the *Sedgwick James* court itself stated that "a scheme to defraud plays no role in the typical policy relationship between the insurer and insured." *Id.* However, the *Sedgwick James* court did not rest its holding on the latter statement alone, but instead applied all the Supreme Court factors[9] to conclude that the practice at issue[10] was not "the business of insurance." In addition to the "scheme to defraud statement," the court also stated that (1) the sale of credit enhancement guarantees involved in *Sedgwick James* was not a practice limited to insurance entities; (2) it was debatable whether the shell company defendant even was an insurance entity; and (3) no risk could effectively have shifted with the sale of the subject surety contracts since the surety shell company had no assets. *Id.* It is this court's belief that the latter three factors were sufficient to support the *Sedgwick James* holding, and that the "scheme to defraud" statement was unnecessary to that holding.

For its own reasons, this court agrees with Defendants that the "fraud is not the business of insurance" approach should not be followed. When a plaintiff invokes an action under a relevant federal law against insur-ance entities, it is presumably because the plaintiff believes that the entities have acted improperly, in violating that law. Limiting the court's McCarran–Ferguson examination of those entities' activities to their wrongful character is inconsistent with the existence of Supreme Court precedents directing courts on the proper examination to make in such circumstances.[11] Given that wrongful conduct is always alleged, an approach that concludes that wrongful conduct is *never* the "business of insurance" would leave no occasion for courts to apply the principles that the Supreme Court has provided. To say that "fraud is never the business of insurance" is to start down that road.

A better approach is for courts to utilize the guidance of the Supreme Court to examine the particular parties, activities and relationships present in each case, in order to determine if "business of insurance" as the Supreme Court has described it, was being practiced when the alleged wrong was committed. This is more consistent with the intent behind McCarran–Ferguson, to allow state insurance regulatory law to have primary effect, absent a specific expression of legislative intent by Congress to do otherwise. "[W]e can not forget that [state regulatory laws] ... are necessarily directed at some form of possible insurance company misconduct which the regulatory statutes exist to prevent or control." *American Int'l Group, Inc. v. Superior Court*, 234 Cal. App.3d 749, 285 Cal.Rptr. 765, 771 (1991).[12]

**9.** These factors are listed *supra* at pp. 199–200.

**10.** *Sedgwick James* involved an off-shore shell company's searching out of borrowers who could not obtain credit, in order to serve as a surety on behalf of lenders, even though the shell company had no assets.

**11.** Again, those Supreme Court statements are found *supra* at pp. 199–200.

**12.** For the above reasons, the court disagrees with *Thacker v. New York Life Ins. Co.*, 796 F.Supp. 1338 (E.D.Cal.1992). In *Thacker*, several insurance agents of the defendant life insurance company allegedly induced the plaintiff to purchase insurance by misrepresentations about the policy's cost and systematically defrauded the plaintiff by using dividends from his policy to pay the difference between the purported and the true cost of the policy. While the *Thacker* court

conceded that the defendants' actions involved the selling and issuance of policies by an insurer to an insured, usually encompassed within the "business of insurance," the court concluded a wiser approach would be to characterize the actions as mail fraud, which was not the "business of insurance." *Id.* at 1342.

Similarly, this court disagrees with *Washburn v. Brown*, No. 81 C 1475, 1986 WL 7062 at *4 (N.D.Ill. June 17, 1986), in its conclusion that "mail fraud is not the business of insurance simply because the scheme to defraud involves contracts for insurance." The *Washburn* court relied, as do Plaintiffs in the captioned action, on *United States v. Sylvanus*, 192 F.2d 96 (7th Cir. 1951), *cert. denied*, 342 U.S. 943, 72 S.Ct. 555, 96 L.Ed. 701 (1952). In *Sylvanus*, criminal defendants appealed their indictments for mail fraud carried on in the sale of insurance policies, on the basis of McCarran–Ferguson. They lost

### (3)

### Prong 3: State Laws Regulating the Complained of Activities

■ The parties do not really dispute that this prong is satisfied.[13] There is no question that in Title 40 of the Pennsylvania statutes, the Commonwealth of Pennsylvania has enacted a comprehensive system of state insurance regulation, intended by the Commonwealth to "occupy the field of regulating the business of insurance as contemplated by ... McCarran–Ferguson." *Black v. Nationwide Mut. Ins. Co.*, 429 F.Supp. 458, 463 (W.D.Pa.1977), *aff'd without opinion*, 571 F.2d 571 (3d Cir.1978).

Conducting an insurance business in the Commonwealth includes the solicitation, issuance and delivery of policies to a person resident in Pennsylvania, such as plaintiff Wexco. 40 Pa.Stat.Ann. § 46(b) (1992). Pennsylvania insurance law defines and regulates the relationships between and duties of the parties involved in the captioned action. *See, e.g., id.* at § 231 (defining insurance agents in terms of representation of insurers); *id.* at § 251 (defining brokers as representatives of insureds); *id.* at § 256 (permitting brokers to solicit or negotiate contracts for insurance on property or risks); *id.* at § 273 (defining and prohibiting larceny by agents and brokers); *id.* at § 273.1 (making agents and brokers fiduciaries). In addition, the Pennsylvania Unfair Insurance Practices Act ("PUIPA") regulates those engaged in the business of insurance in Pennsylvania. *See* 40 Pa.Stat.Ann. § 1171.1 *et seq.* (1992). PUIPA prohibits the commission of unfair and deceptive trade acts and practices, including making or publishing of statements misrepresenting the terms and conditions of a policy, *id.* at §§ 1171.4, 1171.5(a)(1)(i); making or publishing a false statement with respect to the business of insurance, *id.* at § 1171.5(a)(2); permitting or offering an insurance contract to be made which is other than as expressed in the contract itself, *id.* at § 1171.5(a)(8); and making false or fraudulent statements or representations about or relative to an application for an insurance policy, *id.* at § 1171.5(a)(12).[14] PUIPA gives the Pennsylvania Insurance Commissioner authority to investigate the business affairs of those doing insurance business in the state in order to determine if any such prohibited practices have occurred, with administrative hearings provided for if good cause exists to suspect a violation. *Id.* at §§ 1171.7, 1171.8. In addition, it provides for the issuance of administrative cease and desist orders, court injunctions and, in certain circumstances, civil penalties of up to $5,000 per violation. *Id.* at §§ 1171.9, 1171.10, 1171.11. Hence, the Commonwealth has enacted laws regulating insurance, and they expressly reach the activities of Defendants in the captioned action.

### (4)

### Prong 4: Invalidation, Supersession or Impairment of State Regulatory Laws

■ The IMC Defendants have argued that the proper test under this prong is merely to determine whether the state has a comprehensive system of insurance laws—if so, state law is deemed invalidated, supersed-

---

when the *Sylvanus* court concluded that, when Congress passed McCarran–Ferguson, it never intended to surrender its control of the use of the mails. *Id.* at 100. However, *Thacker, Washburn* and the captioned action are civil actions, not criminal actions brought to control the use of the mails. *Sylvanus* does not indicate to this court that civil RICO claims, in which an element of proof is that a violation of the federal fraud statutes occurred, are not encompassed by McCarran–Ferguson. *See American Int'l Group, Inc. v. Superior Court*, 234 Cal.App.3d 749, 285 Cal.Rptr. 765, 772–73 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992).

13. Plaintiffs comment that for the purposes of the motion, they admit that "statutes of this Commonwealth deal with various actions which have been defined by courts to come within the 'business of insurance.' " (Plaintiffs' supplemental reply brief at 4.)

14. *See also, e.g.,* 40 Pa.Stat.Ann. § 277 (prohibiting misrepresentation of terms of policy by agents of insurance companies or exchanges or brokers); *id.* at § 472 (prohibiting misrepresentations of terms of policy by insurance company or exchange); *id.* at § 474 (criminalizing fraud in the procurement of insurance, whether or not the insurance was actually in force, and whether or not the offender profited from the fraud). Like the PUIPA, these provisions are enforced by the Commonwealth Insurance Commissioner. *See id.* at §§ 279, 459.7.

ed or impaired by a federal statute as a matter of law. The IMC Defendants' approach is similar to the test utilized in McCarran–Ferguson cases involving the federal antitrust laws; this test for antitrust cases is reflected in the specific language used in McCarran–Ferguson.[15] The court concedes that, even though the wording of McCarran–Ferguson supports the use of a different test for antitrust cases, some courts have utilized the approach recommended by the IMC Defendants, without comment, in non-antitrust cases. *See, e.g., Richhart v. Metropolitan Life Ins. Co.*, Civil Action No. 89–1725, 1990 WL 39268, 1990 U.S.Dist. Lexis at \* 4–5 (E.D.Pa. March 30, 1990) (for McCarran–Ferguson to bar application of RICO, challenged activities must be business of insurance and regulated by state law; mere existence of a state regulatory scheme is sufficient, unless it is "mere pretense"). However, a number of courts have actually proceeded to an examination of whether the state regulatory law would be invalidated, impaired, or superseded by the application of the relevant federal law.[16] While the court's initial reaction is that this stricter approach is called for by the language of McCarran–Ferguson, it need not decide this issue, as it believes that even under the stricter test, preclusion of the RICO action by McCarran–Ferguson is warranted, as PUIPA would be impaired or superseded by the application of RICO.

As stated earlier, the Pennsylvania legislature chose to have PUIPA and other Pennsylvania insurance regulatory law enforced solely by the Commonwealth's Insurance Commissioner. There is no private cause of action available for violation of the PUIPA or any Pennsylvania insurance regulations. *Wright v. North Am. Life Assurance Co.*, 372 Pa.Super. 272, 539 A.2d 434, 438 (1988); *Hardy v. Pennock Ins. Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471, 478 (1987). While Pennsylvania courts have held that

---

**15.** Again, McCarran–Ferguson states that:
No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act ..., and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended ..., *"shall be applicable to the business of insurance to the extent that such business is not regulated by State law."* 15 U.S.C. § 1012 (emphasis added).
15 U.S.C. § 1012(b) (emphasis added). Hence, a frequently used approach to determine whether antitrust claims are precluded by McCarran–Ferguson has been simply to examine whether the practice of the defendants falls within the business of insurance and whether it is regulated by state law. *See McIlhenny v. American Title Ins. Co.*, 418 F.Supp. 364, 367 (E.D.Pa.1976). If so, the defendants are exempt from claims under federal law because of McCarran–Ferguson; no examination is made regarding whether the specific state laws would be invalidated, impaired or superseded by an application of the relevant federal law. *Id.* at 369. *See also, e.g., Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 421 (4th Cir.1984) (Sherman Act applies generally to business of insurance only in those states in which it is unregulated by local law); *Owens v. Aetna Life & Cas. Co.*, 654 F.2d 218, 226 (3d Cir.), *cert.*

*denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 631 (1981) (so long as state law regulates activities of defendants, they are exempt from antitrust laws by virtue of McCarran–Ferguson); *Maryland v. Blue Cross and Blue Shield Ass'n,* 620 F.Supp. 907, 914 (D.Md.1985) (for entitlement to McCarran exemption, challenged practice must constitute business of insurance and be regulated by state law).

**16.** *See, e.g., Kentucky Cent. Life Ins. Co. v. LeDuc,* 814 F.Supp. 832, 838 (N.D.Cal.1992) (applying RICO would nullify state's determination of appropriate remedies for certain conduct and supersede remedies and regulatory supervision under California law); *Brownell v. State Farm Mut. Ins. Co.,* 757 F.Supp. 526, 536 (E.D.Pa.1991) (Pennsylvania law regarding peer review activity, not in effect when defendants' conduct occurred, would not be invalidated, impaired or superseded by application of RICO); *American Int'l Group, Inc. v. Superior Court,* 234 Cal.App.3d 749, 285 Cal.Rptr. 765, 777 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1044, 118 L.Ed.2d 549 (1992) (application of RICO would invalidate, impair or supersede state law by permitting civil damage recovery where none otherwise available); *Senich v. Transamerica Premier Ins. Co.,* 766 F.Supp. 339, 341 (W.D.Pa.1990) (Pennsylvania Unfair Insurance Practices Act invalidated, impaired or superseded by RICO application); *Becks v. Emery–Richardson, Inc.,* No. 86–6866, 1990 WL 303548 at \*15 (S.D.Fla. Dec. 21, 1990) (concurrent state and federal legislation addressed to the same conduct by insurance enti-

common law causes of action available prior to the enactment of the PUIPA, such as common law fraud and deceit actions, continue to be viable options for aggrieved insureds, *Wright,* 539 A.2d at 438; *Hardy,* 529 A.2d at 476–77; *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427, 430–431 (1986), *allocatur denied,* 516 Pa. 635, 533 A.2d 93 (1987), such common law actions do not reward plaintiffs with the treble damages, costs and attorney fees mandated by RICO. *See* 18 U.S.C. § 1964(c). The availability of a federal private action under RICO would not merely nullify the state's chosen regulatory remedies for insurance. entity misconduct.[17] Rather, this court believes that the availability of a federal private remedy which would reward successful business plaintiffs, such as the captioned parties, with treble damages, costs and attorney fees cannot help but upset the balance of relationships between insurance entities and insureds which are established and regulated by PUIPA and the other state laws to which this court has cited.[18]

### (5)

### In Conclusion

Given that the four prongs of the appropriate test for McCarran–Ferguson preclusion have been met, the court will dismiss Plaintiffs' RICO claims, as barred by McCarran–Ferguson.

Defendants contend that Plaintiffs' entire complaint should be dismissed, since the sole source of jurisdiction cited in the complaint is 28 U.S.C. § 1331 (jurisdiction over federal question) and all federal claims have now been dismissed. Normally, this court would decline to exercise supplemental jurisdiction over pendent state claims if the overlying federal issues were dismissed at the commencement of an action. However, in Plaintiffs' initial response brief, they remarked that diversity jurisdiction exists in this action. (Plaintiffs' original brief in opposition at 6.) While that may possibly be so, the court cannot tell from Defendants' remarks if they contest diversity jurisdiction. At this point, the court does not feel free to dismiss the entire complaint. On the other hand, if the parties plan to contest jurisdiction, the court does not feel it appropriate to move ahead and address the substantive state law issues.

Hence, the court will grant all Defendants' motions solely on the McCarran–Ferguson/RICO issue; the court will then allow Plaintiffs to amend their complaint asserting diversity jurisdiction. Once the amended complaint is submitted, Defendants may reassert state substantive arguments, attack jurisdiction, or do both via motions to dismiss.

An appropriate order will issue.

### ORDER

In consideration of the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

---

ty not necessarily indication that state law is invalidated, impaired or superseded).

**17.** *See Senich,* 766 F.Supp. at 341 (since the UIPA vests enforcement in the Insurance Commissioner, application of RICO would invalidate, impair or supersede Pennsylvania insurance law). *Senich* also noted that the presence of a state common law right of action "does nothing to alter the McCarran–Ferguson Act's exclusion of federal causes of action in the insurance field absent specific statutory authorization." *Id.*

**18.** Hence, this court disagrees with the court's conclusion in *Thacker v. New York Life Ins. Co.* that because private actions for common law fraud exist side-by-side with state regulatory actions (in *Thacker,* the relevant state was California), it cannot be said that a RICO claim impairs state regulation. *See Thacker,* 796 F.Supp. 1338, 1343 (E.D.Cal.1992). However, this court does agree with the court's conclusion in *Kentucky Central Life Ins. Co. v. LeDuc,* 814 F.Supp. at 838, that the relevant state law (in that case, California) is impaired by application of RICO when the legislature has not provided remedies like treble damages and attorney fees to aggrieved insureds.

This court does not believe that the presence of a private action with discretionary triple damages available under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 Pa.Stat.Ann. § 201–9.2 (1992) affects the outcome here. While Pennsylvania courts have held that a private action under the PUTPCPL is available to aggrieved insureds, *Pekular,* 513 A.2d at 432–34, both the language of § 201–9.2 and Pennsylvania case law makes clear that the action is available only to consumers purchasing insurance for personal or household purposes, not to business entities. *See Wright,* 539 A.2d at 438. Of course, it is largely business policies that would involve the high magnitude of costs and damages that would affect the relationship between insurance entities if trebled.

1. The four motions to dismiss submitted by (1) THE IIE DEFENDANTS: defendants Transco Syndicate No. 1, Ltd., Illinois Insurance Exchange, and Gary D. Hackley; (2) DEFENDANT NORDIC SPECIAL RISK AGENCY; (3) THE ALR DEFENDANTS: defendants ALR Risk Managers, Inc., Thomas A. Laffey, Thomas J. Lundon, Corroon & Black, Sven J. Grotrian and Sidney R. Blackman; and (4) THE IMC DEFENDANTS: defendants IMC, Inc. and Thomas P. Reusse, are **GRANTED IN PART.** Plaintiffs' claims against all Defendants under the Racketeer Influenced and Corrupt Organization Act ("RICO") are **DISMISSED.**

2. No later than April 28, 1993, Plaintiffs shall amend their complaint to assert jurisdiction under diversity of citizenship. If an amended complaint is not timely filed, the court will decline to exercise supplemental jurisdiction over the remainder of Plaintiffs' claims and dismiss their complaint in its entirety.

3. Once the amended complaint has been filed, Defendants are free to submit any appropriate motions under the schedules outlined in the Federal and Middle District Rules.